IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17CV437

| | |
|---|---|
| DOMINIQUE EARLY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

This matter is before the Court on the parties' cross motions for summary judgment (# 19, 20) and Plaintiff's Motion to Remand (# 22). Plaintiff, proceeding pro se, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision by the Commissioner of Social Security ("Commissioner").[1] The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, the Court recommends that Plaintiff's motions be denied, and the Commissioner's motion be granted.

**I. Procedural Background**

As a child, Plaintiff received Supplemental Security Income ("SSI") benefits based on a disability. (Transcript of Administrative Record ("T." 26.) The Social Security Act required Defendant to redetermine Plaintiff's (continuing) eligibility for SSI when he turned 18 years old. (T. 26.) On April 16, 2012, it was determined that Plaintiff was no longer disabled as of April 1, 2012. (T. 26). Plaintiff appealed (T. 26), and the decision was upheld on reconsideration after a

---

[1] A pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). Moreover, pro se pleadings are held to less stringent standards than those drafted by an attorney. White v. White, 886 F.2d 721, 722-23 (4th Cir. 1989).

hearing by a State agency Disability Hearing Officer. (T. 26).

On April 25, 2014, Plaintiff filed a request for a hearing. (T. 26, 72.) The Administrative Law Judge ("ALJ") held a hearing in Charlotte, North Carolina on March 14, 2016.[2] (T. 26.) On May 27, 2016, the ALJ determined that Plaintiff's disability ended on April 1, 2012, he had not become disabled again since that date, and all payments should stop immediately. (T. 33.)

Plaintiff requested review of the ALJ's May 27, 2016, decision. (T. 6.) On May 15, 2017, the Appeals Council denied Plaintiff's request for review. (T. 6-9, 94-97.) On July 24, 2017, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1).

## II.     Standard of Review

This Court is authorized to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (citing Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). The Court's role is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation and citation omitted). It constitutes "more than a mere scintilla of evidence but may be less than a preponderance." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

---

[2] Plaintiff did not have an attorney or representative representing him at the hearing. (T. 40.) The ALJ gave Plaintiff the opportunity to postpone his hearing to secure representation, but Plaintiff wished to proceed. (T. 42.)

2

A person under age 18 is deemed "disabled" if he or she has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. When that person turns 18, the Commissioner must redetermine their eligibility under the adult disability standard.[3] 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987(a), (c).

The ALJ follows a four-step process in age-18 redeterminations. Lloyd v. Colvin, No. 4:14-CV-00040, 2015 WL 5690817, at *2 (W.D. Va. Sept. 28, 2015). In particular, the ALJ asks, in the following order, whether the young adult: (1) has a severe impairment, (2) has an impairment that meets or equals an impairment listed in the Social Security Act's regulations, (3) is able to return to his or her past relevant work, if any, and if not, (4) can perform other work that exists in the economy. 20 C.F.R. § 416.987(b) (citing 20 C.F.R. § 416.920(c), (h)).[4]

## III. The ALJ's Decision

In her May 27, 2016, decision, the ALJ ultimately concluded that Plaintiff's disability ended on April 1, 2012, and Plaintiff had not become disabled again since that date. (T. 33.) In reaching her ultimate conclusion, the ALJ made the following specific findings:

(1) The claimant attained age 18 on June 12, 2011, and he was eligible for SSI benefits as a child for the month preceding the month in which he attained age 18. The claimant was notified that he was found no longer disabled as of April 1, 2012, based on a redetermination of disability under the rules for adults who file new applications.

(2) Since April 1, 2012, the claimant has had the following severe impairment:

---

[3] An adult is determined "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

[4] At steps one through three, the claimant bears the burden of proof. Lloyd v. Colvin, No. 4:14-CV-00040, 2015 WL 5690817, at *2 (W.D. Va. Sept. 28, 2015). At the fourth step, the burden shifts to the agency to demonstrate that the claimant is not disabled. Id.

|     |     |
| --- | --- |
|     | mild cerebral palsy (20 C.F.R. § 416.920(c)).[5] |
| (3) | Since April 1, 2012, the claimant did not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926) |
| (4) | Since April 1, 2012, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that he can stand/walk for two hours in an eight-hour workday and sit six hours in an eight-hour workday. The claimant can perform frequent but not constant pushing and pulling with his bilateral lower extremities. He can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl. The claimant can work with occasional exposure to extreme heat and cold, pulmonary irritants, workplace hazards, such as unprotected heights and dangerous machinery. |
| (5) | The claimant has no past relevant work (20 C.F.R. § 416.965).[6] |
| (6) | The claimant was born on June 13, 1993, and he is a younger individual age 18-44 (20 C.F.R. § 416.963). |
| (7) | The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964). |
| (8) | Transferability of jobs skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968). |
| (9) | Since April 1, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969, 416.969(a)). |
| (10) | The claimant's disability ended on April 1, 2012, and he has not become disabled again since that date (20 C.F.R. §§ 416.987(e), 416.920(g)). |

(T. 26-33.)

## IV.  Discussion[7]

---

[5] The ALJ found that Plaintiff's scoliosis and asthma were non-severe impairments. (T. 28.)
[6] Plaintiff testified that he has never done any work for pay, not even mowed the lawn for cash. (T. 46.)
[7] In an effort to liberally construe Plaintiff's filings, the Court has construed Plaintiff's answer (# 18), motion for summary judgment (# 19), and motion to remand (# 22) as a single motion for summary judgment.

4

### A. The ALJ properly recognized and accounted for Plaintiff's cerebral palsy.

Plaintiff asserts:

> Dominique early was born prematurely at 29 weeks at his residence. Dominique had a life-threatening birth and had no medical assistance until the paramedics arrived and he and his mother was taken to the hospital by ambulance. At 6 months old during a follow up visit, Dominique's medical provider assessed Dominque and noted his legs would not relax, his legs bilaterally were tight and unable to be stretched straight and he had developmental delays. Domonique was diagnosed with Cerebral Palsy at 6 months old.

(# 19) at 1; see (# 22) at 1. Even if this Court accepts Plaintiff's assertions as statements of fact, Plaintiff has failed to suggest how the ALJ erred in her decision. The issue before the ALJ was whether Plaintiff was disabled upon attaining age 18 and afterward (through the date of the ALJ's decision). In sum, the circumstances of Plaintiff's premature birth and diagnosis with cerebral palsy at six months old are generally not significant except to establish the existence of Plaintiff's cerebral palsy during the relevant time period, which the ALJ properly did when she found that Plaintiff's cerebral palsy was a mild severe impairment. (T. 28.)

### B. The ALJ did err by failing to consider Plaintiff's CT scan.

Next, Plaintiff argues that the ALJ erred by failing to consider his abnormal CT scan. (# 19) at 1-2; see (# 22) at 1. According to Plaintiff, the CT scan is relevant to his "severe impairment." (# 19) at 2.

"[T]he ALJ is not required to address every piece of evidence[;] [instead,] he must . . . build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). The important thing is that a reviewing court can determine from the opinion "what the ALJ did and why he did it." Piney Mountain

Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (quotation omitted).

The CT scan at issue was performed on July 15, 1994. (T. 359.) At the time, Plaintiff was only just over a year old. (T. 44.) A medical record from that time period indicates that the CT scan revealed "nonspecific findings" but also "raise[d] the possibility of mild periventricular leukomalacia." (T. 359.)

The Court finds that Plaintiff's CT scan, dated almost 18 years before the relevant time period, is significant only to show that Plaintiff's cerebral palsy is a severe impairment, which is uncontested.

### C. The record before the Court is not inadequate.

Plaintiff argues that the ALJ failed to develop record. (# 19) at 2; see (# 22) at 2. In particular, Plaintiff contends that the ALJ failed to develop his medical history or should have re-contacted his medical sources. (# 19) at 2.

The ALJ has "a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). "Social Security proceedings are inquisitorial rather than adversarial[ ] [and] [i]t is the ALJ's duty to investigate the facts and develop arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 110-11 (2000). When the ALJ "fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded. Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980).

Plaintiff contends that his struggles in school should have been considered. (# 19) at 5. Specifically, Plaintiff contends that he missed 85 days of his 12th grade year from

6

fatigue, which would "not be acceptable on a job." Id. Plaintiff further contends that the ALJ did not give proper weight to his excessive absences.[8] (# 18) at 2; see (# 22) at 3.

The record before this Court indicates the following: For ninth through eleventh grade, Plaintiff did not have such excessive absences. (T. 219, 273.) Next, Plaintiff's mother acknowledged in May, 2012, when asked if Plaintiff was exhibiting unusual behavior, that she had noticed absences from school. (T. 252.) Finally, Plaintiff has made no allegations to suggest what condition(s) he suffers from that would cause him to be sick or fatigued so often, other than possibly asthma, which will be addressed below.

> **D.     The ALJ's finding that Plaintiff's asthma was not a severe impairment is supported by substantial evidence.**

Plaintiff appears to generally argue that the ALJ erred by failing to find that his asthma is a severe impairment. (# 19) at 4. The record before this Court reveals the following: Plaintiff has not been to the hospital for an asthma attack. (T. 28.) Plaintiff was prescribed an Albuterol inhaler to use on an as needed basis. (T. 51.) Plaintiff testified that he actually used the inhaler "not too often." (T. 51.)

In an effort to give Plaintiff the benefit of any doubt, the ALJ limited him to only occasional exposure to extreme heat and cold and pulmonary irritants. (T. 29.) These limitations are consistent with the opinion offered by Lillian Horne, M.D. (See T. 26-27, 483.) The ALJ recognized that Plaintiff's asthma might affect his ability to function; thus, the ALJ noted that Plaintiff could "only work with occasional exposure to pulmonary irritants, in order to prevent exacerbation of his asthma." (T. 29.)

The ALJ's findings, as they relate to Plaintiff's asthma, are supported by substantial

---

[8] Plaintiff asserts that he missed over half of the school year calendar days and attended school approximately two days a week. (# 18) at 2. Plaintiff further asserts that he graduated at age 21 and struggled due to being sick and fatigued. Id.

7

evidence. For example, when Plaintiff saw Nurse Shook in July 2012, Plaintiff denied respiratory symptoms, and the examination revealed clear lungs to auscultation and non-labored respiration, with no rales, rhonchi, or wheezes. (T. 28, 31, 499, 502.) Later in 2012, when receiving a consultative examination, Plaintiff denied ever having shortness of breath that required an emergency room visit or hospitalization. (T. 28, 31, 480.) Later, in March 2014, Plaintiff complained of wheezing occasionally with seasonal changes, but Plaintiff indicated that he did not take allergy medication. (T. 28, 31, 509.) Plaintiff's respiratory examination was within normal limits. (T. 26, 506.)

### E. The ALJ's finding that Plaintiff's cerebral palsy did not meet Listing 11.07 is supported by substantial evidence.

Plaintiff appears to argue that there was an "error on the face of the evidence."[9] (# 19) at 5. Specifically, Plaintiff contends that the ALJ erred by concluding that he did not meet Listing 11.07. Id.

The Listing of Impairments ("listings") set forth impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). The listings set forth impairments that would prevent an adult, regardless of his age, education, or work experience, from performing gainful activity. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). A claimant bears the burden of producing evidence that his severe impairment meets or medically equals the criteria for a listing. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); see also Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a Listing, he must show that it meets all of the specified criteria. An impairment

---

[9] The "error on the face of the evidence" standard applies to reopening a determination or decision, which is not applicable to the instant case. See 20 C.F.R. § 416.1489(a)(3).

that manifests only some of those criteria, no matter how severely, does not qualify.").

Listing 11.07[10], Cerebral Palsy, requires:

A. IQ of 70 or less; or

B. Abnormal behavior patterns, such as destructiveness or emotional instability; or

C. Significant interference in communication due to speech, hearing, or visual defect; or

D. Disorganization of motor function as described in Listing 11.04B.[11]

20 C.F.R. Pt. 404, Subpt. P, App. 1 (11.07).

In the instant case, with respect to Listing 11.07, the ALJ determined that Plaintiff did not meet the requirements of Listing 11.07 because he did not have an IQ or 70 or less, abnormal behavior patterns, significant interference in communication, or disorganization of motor function as described in Listing 11.04B. (T. 29.) The ALJ's finding is supported by substantial evidence.

The record before the Court reveals the following: Plaintiff does not require a cane or crutches.[12] (T. 66.) Plaintiff uses leg braces, but not all the time. (T. 67.) Even Plaintiff concedes that his cerebral palsy is "mild" in nature. (T. 142.)

On May 25, 2011, Plaintiff was seen by James S. Starman, M.D. for an evaluation of his diplegic cerebral palsy. (T. 458-59.) At that time, Plaintiff's mom reported that Plaintiff previously used a sold ankle-foot orthosis ("AFO"), but Plaintiff had not had one for approximately a year and was interested in replacing the AFO. (T. 458.) Dr. Starman

---

[10] As the regulation stood on May 27, 2016, the date the Law Judge issued her decision.
[11] Listing 11.04(B) states, "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1.
[12] Plaintiff testified that he used crutches at approximately age 12 or 13. (T. 66.)

9

opined that overall, Plaintiff was doing "quite well functionally." (T. 458.) Plaintiff was given a prescription for some ground reaction AFOs to help improve his gait pattern.[13] (T. 459.) Plaintiff was directed to return in three months so that Dr. Starman could ensure the AFOs were helping. (T. 459.)

### F. The Law Judge's RFC finding is supported by substantial evidence.

Plaintiff next argues that his cerebral palsy, asthma, and history of scoliosis render him more limited than the ALJ found. (# 18) at 1-2; (# 19) at 2-5. In particular, Plaintiff questions the Law Judge's RFC finding as it relates to his ability to stand and walk. (# 18) at 1-2; (# 19) at 2-5.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). Social Security Ruling ("SSR") 96-8p provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1.

In the instant case, the ALJ properly accommodated Plaintiff's impairments by limiting Plaintiff to sedentary work, as defined in 20 C.F.R. § 416.967(a), except that he can only stand/walk for two hours in an eight-hour workday and sit six hours in an eight-hour workday. (T. 29.) Plaintiff was limited to only occasional exposure to extreme heat and cold, pulmonary

---

[13] "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) ("[A] claimant who has a disabling impairment which can reasonably be classified as remediable is not entitled to receive disability benefits.")).

irritations, and workplace hazards, such as unprotected heights and dangerous machinery. (T. 29.)

The Law Judge's RFC finding is consistent with the February 22, 2013, opinion provided by medical consultant Dr. Horne. (T. 484-91.) Dr. Horne's assessment was a current physical RFC. (T. 484.) Dr. Horne noted that Plaintiff's primary diagnosis was cerebral palsy, and his second diagnosis was asthma. (T. 484.) Dr. Horne further noted that Plaintiff had a history of scoliosis. (T. 484.) Dr. Horne opined that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday. (T. 485.) Dr. Horne found that Plaintiff could never climb ladders, ropes, or scaffolds. (T. 486.) Dr. Horne further found that Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. (T. 486.) Dr. Horne concluded that Plaintiff suffered no manipulative limitations, no visual limitations, and no communicative limitations. (T. 487-88.) As for environmental limitations, Dr. Horne opined that Plaintiff needed to avoid concentrated exposure to extreme cold; extreme heat; fumes, odors, dusts, gases, and poor ventilation, etc.; hazards (machinery, heights, etc.). (T. 488.) Plaintiff's ability to be around wetness, humidity, noise, and vibration was unlimited. (T. 488.) The ALJ found that Dr. Horne's opinion was "fully consistent" with the objective medical evidence of record, which included Plaintiff's lack of regular medical treatment and Plaintiff's fairly wide range of activities. (T. 31-32.) The ALJ gave Dr. Horne's opinion "great weight." (T. 32.)

Plaintiff's mother, Lavinia Gleaton ("Gleaton"), represented that Plaintiff can lift about 20 pounds. (T. 243.) Gleaton further represented that Plaintiff is capable of ironing, making his bed, and washing dishes. (T. 248.) Gleaton noted that Plaintiff can walk less than 0.5 mile before getting tired. (T. 243.) Gleaton further noted that Plaintiff does <u>not</u> require crutches, a walker, a

wheelchair, a cane, braces, or a splint. (T. 244, 252.)

On November 19, 2012, Tuan Anh Huynh, M.D. found that Plaintiff suffers with cerebral palsy and asthma. (T. 480.) Plaintiff reported that his asthma has not required him to the emergency room in the last year and has not required a hospitalization within the last 5 years. (T. 480.) Plaintiff stated that he could walk 200 feet, stand for 5 minutes, and pick up 10 pounds. (T. 480.) Plaintiff's only medication was an Albuterol inhaler, which was used only on an as needed basis. (T. 481.) Plaintiff did not require any sort of assistive device. (T. 482.) Dr. Huynh opined:

> The claimant's condition result [sic] in moderate postural limitations and mild exertional limitations. He would be impaired moderately upon sit, stand, move about, lift, and carry. He would have no impairment upon handle objects, hear, speak, and travel.

(T. 482.)

At Plaintiff's March 14, 2016, hearing before the ALJ, Plaintiff testified that he could stand for 15 minutes before he needs to sit down. (T. 47.) Plaintiff stated that he could walk for 17 minutes before growing tired. (T. 47-78.) Plaintiff explained that sitting poses no problem for him. (T. 48.) Plaintiff testified that he could lift 15-20 pounds. (T. 48.) Plaintiff also testified that he had not received any medical treatment since 2011. (T. 50.)

### G. The ALJ assigned proper weight to the medical opinions.

Plaintiff finally argues that the ALJ did not assign proper weight to the medical opinions in the record. (# 22) at 2. In particular, Plaintiff contends that the ALJ failed to assign substantial weight to any of the medical opinions. Id. Plaintiff concludes that this provides yet another basis for remand. Id.

A review of the record before the Court reveals that the ALJ assigned "some

12

weight" to Dr. Huynh's opinion and "great weight" to Dr. Horne's opinion.  (T. 32-33.) Moreover, substantial evidence supports the ALJ's findings.  See (T. 26-33.)  Finally, an ALJ need not obtain a specific expert medical opinion to support a particular RFC finding, but he should base a claimant's RFC on the claimant's subjective complaints, the objective medical evidence, and the opinions offered by treating, examining, and nonexamining physicians. Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011).

In sum, the ALJ applied the correct legal standards, and substantial evidence supports the ALJ's findings and ultimate decision.  See Hall v. Berryhill, No. 3:17-CV-00285-MOC, 2018 WL 1463702, at *1 (W.D.N.C. Mar. 23, 2018) ("[T]he only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence.").  Therefore, the Commissioner's decision should be affirmed.

**V.    Conclusion**

In light of the foregoing, the Court RECOMMENDS the following:

(1) Plaintiff's Motion for Summary Judgment (# 19) be DENIED;

(2) Plaintiff's Motion for Remand (# 22) be DENIED; and

(3)  The Commissioner's Motion for Summary Judgment (# 20) be GRANTED.

Signed: May 6, 2018

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).