UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-437-MOC-DLH

| | | |
|---|---|---|
| **DOMINIQUE EARLY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on review of a Memorandum and Recommendation issued in this matter. In the Memorandum and Recommendation, Magistrate Judge Dennis Howell advised the parties of the right to file objections within 14 days, all in accordance with 28 U.S.C. § 636(b)(1)(c). Objections have been filed within the time allowed.

I.    **Applicable Standard**

The *Federal Magistrates Act of 1979*, as amended, provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection.

Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the magistrate judge's recommendation.

## II.    Discussion

Here, plaintiff (who is proceeding *pro se*) makes three objections to the magistrate judge's recommendation. The court will review each objection in turn, construing them liberally out of deference to plaintiff's *pro se* status.

### a.  *Plaintiff's objection over misuse of relevant evidence*

First, plaintiff argues that the ALJ ignored relevant evidence that ultimately would have changed the ALJ's findings. Specifically, plaintiff points to an x-ray from April 2007 showing "radiopacity overlying the left femoral neck, as well as some soft tissue mineralization overlying the iliopsoas tendon at or adjacent [sic] to its insertion, heterotopic soft tissue mineralization is seen." Doc. #25 at 1. Plaintiff then compares it to a prior exam from April 2004 where no soft tissue mineralization was seen, and argues that this demonstrates a worsened condition that is frequently seen with "musculoskeletal trauma, spinal cord injury, burns or traumatic brain injury." Id. As such, plaintiff argues that this supports testimony of plaintiff's challenges in not being able to walk or stand for long, and that the ALJ should have taken this into account. Further, plaintiff argues that the ALJ ignored plaintiff's testimony that he had to rest for around 15 minutes.

Here, the court cannot find that the ALJ committed reversible error. The ALJ did take plaintiff's testimony about resting into account, as the ALJ specifically notes that claimant "can stand fifteen minutes, and then must sit down for twenty minutes" and that he can walk "seventeen minutes slowly." (Tr. 24). As for the 2004 and 2007 tests and evidence, the ALJ "does not have to

specifically refer to every piece of evidence in his or her decision." Grubby v. Astrue, 2010 WL 5553677, at *6 (W.D.N.C. Nov. 18, 2010) (citation omitted), report and recommendation adopted, 2011 WL 52865 (W.D.N.C. Jan. 7, 2011). Further, "the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered." Brewer v. Astrue, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (citing decisions from the Third, Seventh, Eighth, and Eleventh Circuit Courts of Appeal). As the evidence in question comes from 2004 and 2007 and is of questionable relevance due to significantly predating the period at issue, the court finds no issue with the ALJ failing to cite to it specifically, particularly when it does not appear to establish an additional severe impairment or support a limitation in excess of what the ALJ already found. Therefore, the court finds no basis for reversal on this issue.

   *b. Plaintiff's objection to the ALJ's residual functional capacity finding*

   Next, the court considers plaintiff's objection to the ALJ's residual functional capacity ("RFC") finding. Plaintiff argues that the ALJ wrongly found that plaintiff could stand for up to two hours a day, saying that he can stand for only a total of 30 to 45 minutes per day due to his impairment and uncomfortable posture. However, plaintiff does not point to any specific objectionable activity by the ALJ, and instead relies on his personal assessment of his capabilities. Plaintiff also relies on a case from the Ninth Circuit Court of Appeals as evidence that his impairment is permanent and that the ALJ failed to provide a proper reason for discrediting plaintiff's testimony. See Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014).

   Here, the court cannot find the ALJ committed error. The ALJ closely evaluated the medical evidence of record, including opinions that covered plaintiff's ability to stand and walk for periods of time. (Tr. 24-26). As described above, the ALJ did not try to discredit plaintiff's

testimony; indeed, she cited to plaintiff's own testimony as support for her decision. Specifically, plaintiff himself testified that he could stand for fifteen minutes at a time, but would have to sit for twenty minutes before standing again. (Tr. 24-25, 42). Based on such increments, the ALJ's ultimate finding of only two hours standing or walking over an eight-hour workday appears to be a conservative estimate, and plaintiff may have been capable of even more. In any case, the court cannot find that the ALJ committed any harmful error in her RFC analysis, as review of the record shows it is supported by substantial evidence and that the ALJ properly explained her reasoning. As such, the court finds no basis for reversal on this issue.

c. *Plaintiff's objection to vocational expert testimony*

Finally, the court considers plaintiff's objection to the testimony of the vocational expert ("VE") that the ALJ relied on in this matter. Plaintiff reiterates his earlier arguments about tests from 2004 and 2007 and argues that the VE would have changed their testimony had they known. Plaintiff also argues that the VE should have been informed of past hospitalizations for asthma, how often plaintiff is able to do chores, and plaintiff's issues with school attendance as evidence of his inability to work.

Again, the court does not find any reversible error over the ALJ's failure to specifically discuss the 2004 and 2007 tests, as she is not required to list every single piece of evidence, there is no indication it was not considered, and even if it was not, it does not affect the outcome of the case. Grubby, 2010 WL 5553677 at *6; Brewer, 2008 WL 4682185, at *3. As for hospitalizations, plaintiff cites only to a 1994 hospitalization from his childhood, which far predates the relevant period at issue; for similar reasons to the 2004 and 2007 tests, the court cannot find the ALJ committed harmful error in failing to specifically mention it. Also, the ALJ did specifically note

the lack of any recent hospitalizations for asthma, as per plaintiff's own testimony. (Tr. 23, 46).

For chores, the ALJ did note that plaintiff does chores as part of his activities of daily living. (Tr. 25). Plaintiff argues this is misleading, as plaintiff's mother indicated on a May 2012 function report that plaintiff only does chores (house and yardwork) twice per week, not every day. However, that report indicates only what plaintiff's mother said plaintiff did, not the maximum plaintiff is capable of doing, and the record shows that the ALJ considered plaintiff's activities and plaintiff's mother's report, assigning it little weight because it is a lay opinion based on casual observation instead of objective medical examination and testing, as well as potentially influenced by family loyalties. (Tr. 24-25). The same goes for plaintiff's alleged issues with school attendance; again, the ALJ considered that plaintiff could attend school as part of her overall analysis. (Tr. 25). Any attendance issues themselves are tertiary to the purpose of the analysis, given that such issues indicate only what plaintiff did and not what plaintiff is typically capable of doing, and are deemed trivial in light of the substantial evidence in support of the rest of the ALJ's analysis. As such, the court finds no basis for reversal on this issue.

After such careful review, the Court determines that the recommendation of the magistrate judge is fully consistent with and supported by current law. Further, the factual background and recitation of issues is supported by the applicable pleadings. Based on such determinations, the Court will fully affirm the Memorandum and Recommendation and grant relief in accordance therewith.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Memorandum and Recommendation (#24) is **AFFIRMED,** plaintiff's *pro se* Motion for Summary Judgment (#19) is **DENIED**, defendant's

Motion for Summary Judgment (#20) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

Signed: July 3, 2018

Max O. Cogburn Jr.
United States District Judge